**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

SANDRA MARIE C.

                              **Plaintiff,**

                              v.

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

**5:21-cv-328 (GLS)**

_____

**APPEARANCES:**

**FOR THE PLAINTIFF:**
Olinsky Law Group
250 South Clinton Street
Suite 210
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. CARLA B. FREEDMAN
United States Attorney
100 South Clinton Street
Syracuse, NY 13261

Ellen Sovern
Regional Chief Counsel
Office of Regional Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**OF COUNSEL:**

HOWARD D. OLINSKY, ESQ.

LISA SMOLLER
Special Assistant U.S. Attorney

**Gary L. Sharpe
Senior District Judge**

## **MEMORANDUM-DECISION AND ORDER**

### I. **Introduction**

Plaintiff Sandra Marie C. challenges the Commissioner of Social Security's denial of Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).  (Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering Sandra's arguments, the Commissioner's decision is affirmed and the complaint is dismissed.

### II. **Background**

Sandra applied for DIB and SSI on March 21, 2019, alleging a disability beginning on January 19, 2018  (Tr.[1] at 90-91, 234-246.)  When her applications were denied, (Tr. at 124-26), she requested reconsideration, (Tr. at 134-37), which was denied (Tr. at 138-43).  Sandra then requested a hearing before an Administrative Law Judge (ALJ), (Tr. at 150-53), which was held on May 14, 2020, (Tr. at 30-65).  On August 20, 2020, the ALJ issued an unfavorable decision denying the

---

[1] Page references preceded by "Tr." are to the administrative transcript.  (Dkt. No. 12.)

2

requested benefits, (Tr. at 7-28), which became the Commissioner's final determination upon the Appeals Council's denial of review, (Tr. at 1-4).

Sandra commenced the present action on March 23, 2021 by filing her complaint, wherein she seeks review of the Commissioner's determination. (Compl.) Thereafter, the Commissioner filed a certified copy of the administrative transcript. (Dkt. No. 12.) Each party filed a brief seeking judgment on the pleadings. (Dkt. Nos. 17, 18.)

### III. Contentions

Sandra contends that "the ALJ's . . . [residual functual capacity (RFC)] determination is unsupported by substantial evidence[2] as she failed to properly evaluate the opinions of consultive examiners Dennis Noia, Ph.D., and Corey Anne Grassl, Psy.D." (Dkt. No. 17 at 1, 10-15.) The Commissioner counters that the ALJ properly evaluated the opinions at issue and that the ALJ's RFC is supported by substantial evidence. (Dkt. No. 18 at 3-8.)

### IV. Facts

---

[2] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir.1990) (internal quotation marks and citation omitted).

The court adopts the parties' factual recitations to the extent they are consistent with the statement of facts contained in the ALJ's decision and supported by the medical record. (Tr. at 2-22; Dkt. No. 17 at 1-10; Dkt. No. 18 at 1-3.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-*3 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Medical Opinions

---

[3] The § 405(g) standard of review in DIB proceedings brought under Title II of the Act also applies to SSI proceedings under Title XVI of the Act. *See* 42 U.S.C. § 1383(c)(3). Similarly, the analysis of SSI claims under Title XVI parallels, in relevant part, the statutory and regulatory framework applicable to DIB claims under Title II. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Accordingly, although the regulatory sections cited herein are sections of Title II, the substance is found in both Title II and Title XVI.

4

Sandra asserts that the ALJ's RFC determination was legally erroneous and not supported by substantial evidence because she failed to evaluate the opinions of Dr. Noia and Dr. Grassl "in accordance with the regulations and case law." (Dkt. No. 17 at 13.) Specifically, Sandra argues that the ALJ incorrectly "cherry[-]pick[ed] [evidence] from the record to place [Sandra's] overall mental functioning in the best possible light." (*Id.* (citation omitted)). The Commissioner counters that the ALJ's evaluation of the opinions was free form legal error, and that the ALJ's mental RFC determination was supported by substantial evidence. (Dk. No. 18 at 3-4.) Additionally, the Commissioner contends that the ALJ did not cherry-pick from the record because the ALJ noted both the positive and negative findings from Dr. Noia and Dr. Grassl's opinions. (*Id.* at 6-7.)

For claims filed after March 27, 2017, the "ALJ must articulate in . . . her determination how persuasive . . . she finds all of the medical opinions." *Daniel E. v. Kijakazi*, No. 6:20-CV-1270, 2022 WL 602533, at *4 (N.D.N.Y. Mar. 1, 2022) (citing 20 C.F.R. § 416.920c(b), which parallels 20 C.F.R. § 404.1520c). An ALJ will consider the following factors when assessing opinion evidence: (1) "supportability"; (2) "consistency"; (3) "relationship with the claimant," which includes the "length of the treatment

5

relationship," the "frequency of examinations," the "purpose" and "extent of the treatment relationship," and the "examining relationship"; (4) "specialization"; and (5) any "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(a), (c). An ALJ must "explain how [she] considered the supportability and consistency factors" in her decision and "may, but [is] not required to, explain how [she] considered the [additional] factors." 20 C.F.R. § 404.1520c(b)(2). In explaining how she considered the supportability and consistency factors, an ALJ must "point[] to specific evidence in the record supporting those findings." *Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313, 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021) (internal quotation marks and citation omitted). In the event that an ALJ does not "adequately address the consistency factor, the ALJ's decision can still be affirmed if a searching review of the record indicates that the substance of the consistency factor was not traversed." *John L. M. v. Comm. of Soc. Soc.*, No. 21-cv-368, 2022 WL 2800902, at * 5 (N.D.N.Y. Jul. 18, 2022).

Cherry-picking refers to crediting evidence that supports one finding while ignoring conflicting evidence from the same source*. See Younes v.*

6

*Colvin*, No. 14-CV-170, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015). Cherry-picking can "indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both." *See Karin D. v. Comm'r*, No. 20-CV-1158, 2022 WL 3355253, at * 7 (N.D.N.Y. Aug. 15, 2022) (citation omitted). While the ALJ is not permitted to cherry-pick the evidence, "she is not required to explicitly analyze every piece of conflicting evidence in the record." *Shawn W. v. Kijakazi*, No. 20-CV-1513, 2022 WL 4094939, at 18 (N.D.N.Y. Sept. 7, 2022) (citations omitted).

> Here, the ALJ determined that Sandra
>
> has the RFC to perform a full range of work at all exertional levels. She can perform simple and routine tasks at a consistent pace but not a fast production rate pace such as would be experienced in assembly line type of work. She can tolerate occasional brief and superficial contact with coworkers and the public and ordinary supervision. She can make simple decisions directly related to her work and tolerate minor changes in work locations or processes. She cannot tolerate concentrated exposure to respiratory irritants.

(Tr. at 15.) The ALJ found the opinions of Drs. Noia and Grassl to be persuasive but not to the extent in which they opined that Sandra had any marked limitations. (Tr. at 17-18.) Dr. Noia indicated that Sandra "appear[ed] to have marked limitations regulating emotions, controlling

7

behavior, and maintaining well-being." (Tr. at 420.) Dr. Grassl opined that Sandra was "[m]arkedly limited in her ability to interact adequately with supervisors, co-workers, and the public; regulate emotions, control behavior, and maintain well-being; and sustain an ordinary routine and regular attendance at work." (Tr. at 541.) The ALJ discussed both of these opinions and explained that "marked limitations are not supported by Dr. Noia's and Dr. Grassl's own mental status examination findings, which were relatively unremarkable." (Tr. at 17-18.) Additionally, the ALJ reasoned that marked limitations were not consistent with Sandra's "lack of regular and on-going mental health treatment." (Tr. at 18.)

    Here, the ALJ did not err with respect to her evaluation of the opinions of Drs. Noia and Grassl. While Sandra contends the ALJ failed to discuss the factors of supportability and consistency of both opinions, (Dkt. No. 17, at 11-14), she is mistaken as discussed above. Accordingly, the ALJ's evaluation of the persuasiveness of Dr. Noia and Dr. Grassl's opinions is free from legal error.[4]

---

   [4] Even if the ALJ did not adequately address the consistency factor, the substance of the consistency factor has not been traversed. *See John L. M.*, 2022 WL 2800902, at *5 (affirming an ALJ's decision where he did not adequately evaluate a medical opinion under the consistency factor, but substantial evidence nonetheless supported the weight assigned to

The ALJ's RFC determination was also supported by substantial evidence. The ALJ determined that, despite her assertions to the contrary, Sandra is not "markedly limited in any aspect of work-related mental functioning." (Tr. at 17.) The ALJ pointed to several mental status examinations in support of her conclusion: in February 2018, Sandra's mood and affect were reported as "normal," (Tr. at 19 (citing Tr. at 1310)); in December 2018, she showed "adequate grooming and hygiene," was "pleasant" and "cooperative," she related well, her affect was "full range," and her thought process was "clear, coherent, [and] logical," (Tr. at 19 (citing Tr. at 443)); in February 2019, despite not taking her prescribed medications, she again showed adequate grooming and hygiene, was pleasant and cooperative, she related well, her affect was "full range," and her thought process was clear, coherent, and logical, (Tr. at 19 (citing Tr. at 439)); in March 2019 her attitude remained pleasant, she showed "no apparent anxiety, depression, or agitation," she maintained good eye

---

the medical opinion). In discussing her findings, the ALJ explains that "the record does not support greater mental restrictions . . . than identified in the established [RFC]," and cited to several mental status examinations between 2018 and 2020, wherein Sandra's mood and affect appeared normal, she was adequately groomed, spoke well, maintained eye contact, and her thought process appeared "clear, coherent, and logical." (Tr. at 19.)

9

contact, and her thought process was "clear, appropriate, coherent, and logical," (Tr. at 19 (citing Tr. at 637)); and several EMT records and progress notes state that her attitude was pleasant without any anxiety, depression, or agitation, she maintained good eye contact, and her thought process was "clear, appropriate, coherent, and logical." (Tr. at 19 (citing Tr. at 512, 515, 532, 573, 634, 637, 641, 644, 647, 650, 653, 656)).

Sandra also argues that the ALJ's determination that she did not engage in regular and ongoing mental health treatment was an "overly simplistic reading of the evidence," (Dkt. No. 17 at 13), however, the record indicates that Sandra had several month-long gaps in her treatment between 2018 and 2020. (Tr. at 424, 442, 437, 663 (treatment notes from Liberty Resources showing both eight-month and ten-month gaps in treatment)). Because the record demonstrates that there were gaps in Sandra's treatment, and an ALJ is permitted to consider these gaps when making her determination, there is no error with respect to how the ALJ considered this evidence. SSR 16-3p, 2017 WL 5180304, at * 9 (Oct. 25, 2017) ("We will consider an individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed when evaluating whether symptom intensity and persistence affect the ability to

perform work-related activities for an adult."); *See Amy T. v. Comm'r of Soc. Sec.*, No. 17-CV-1176, 2018 WL 5297808, at 10 (N.D.N.Y. Oct. 25, 2018) (affirming an ALJ's RFC determination that the claimant's mental health improved where the ALJ considered, among other things, the claimant's gaps in treatment).

To the extent Sandra argues that the ALJ engaged in impermissible cherry-picking in finding that the opinions of Drs. Noia and Grassl were "relatively unremarkable," (Tr. at 18), the court is not persuaded. The ALJ did not ignore the finding of marked limitations by either doctor, rather, the ALJ explicitly acknowledged them and explained how those findings affected the weight assigned to their opinions by comparing their findings to their respective mental status examinations and other medical evidence indicating that Sandra appeared "normal," and prior mental status examinations found her limitations "relatively benign." (Tr. at 14, 18-19 (citing Tr. at. 439, 443, 512, 515, 532, 573, 634, 637, 641, 644, 647, 650, 653, 656, 664, 669-70.) Accordingly, the ALJ's discussion of marked limitations from Drs. Noia and Grassl demonstrates that the ALJ did not cherry-pick the record.

**B.     Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision, as it is supported by substantial evidence and free from legal error.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED** that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED** that the complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that Sandra's motion for judgment on the pleadings (Dkt. No. 17) is **DENIED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 26, 2022
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge